```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

BERTRAM COOPER,                  :
                                 :
     Plaintiff,                  :
                                 :
v.                               :    No. 3:03CV01694(DJS)
                                 :
UNITED STATES POSTAL SERVICE,    :
ET AL.,                          :
                                 :
     Defendants.                 :
```

## MEMORANDUM OF DECISION AND ORDER

Plaintiff, Bertram Cooper ("the Plaintiff") brought this action for declaratory and injunctive relief against Defendants United States Postal Service ("the Postal Service"), John E. Potter, and Ronald G. Boyne (collectively, "the Postal Service Defendants"), and against Intervenor Defendants Full Gospel Interdenominational Church, Inc., Dr. Philip Saunders Heritage Association, Inc., and Sincerely Yours, Inc. ("SYI") (collectively, "the Intervenor Defendants"), alleging violations of his rights, and the rights of all citizens, under the Establishment Clause of the First Amendment to the United States Constitution.  The court assumes that the parties are familiar with the background facts of this case as a result of other aspects of this controversy having been brought here and decided and that it need not restate them in detail here.  In brief, this case involved whether, and to what extent, it is constitutional for the Postal Service to allow the Church to operate a business

known as a contract postal unit in Manchester, Connecticut (the "Manchester CPU"), which, pursuant to a contract with the Postal Service, provides certain postal services to the public.[1]

In the court's April 18, 2007 decision on the parties' motions for summary judgment, the court determined that religious displays at the Manchester CPU violated the Establishment Clause and issued a permanent injunction ordering the removal of religious displays from the Manchester CPU and further ordering the Postal Service to ensure compliance with the court's injunction prohibiting CPUs from acting in a manner that proselytizes or advances religion. Cooper v. United States Postal Service (Cooper I), 482 F. Supp. 2d 278 (D. Conn. 2007). In response to a motion to amend the judgment, the court amended the injunction to apply only to the Manchester CPU. Cooper v. United States Postal Service (Cooper II), 245 F.R.D. 60 (D. Conn. 2007)

The Intervenor Defendants appealed to the Second Circuit from the amended decision.[2]  This court stayed enforcement of the amended injunction pending the disposition of the appeal.  The Second Circuit subsequently vacated the judgment of this court

---

[1] "Cooper stopped using the CPU when he entered a nursing home, but the suit has continued on behalf of three intervenors who are similarly aggrieved." Cooper v. United States Postal Service, 577 F.3d 479, 484 (2d Cir. 2009).

[2] The Postal Service Defendants filed and subsequently withdrew an appeal from the amended decision.

and remanded the case for the further amendment of the injunction "limited to that part of the CPU fulfilling the Postal Services's mandated public function," i.e., "[t]he postal counter, post office boxes and shelving units. . . ." Cooper v. United States Postal Service (Cooper III), 577 F.3d 479, 496-97 (2d Cir. 2009). The court issued a further amended injunction on May 27, 2010, which ordered the removal of all religious material from the Manchester CPU's postal counter, post office boxes and the shelving unit housing postal products.  (Dkt. # 120.)

Now pending before the court is the plaintiffs' Renewed Motion for Attorney Fees and Costs[3], which was filed pursuant to the Equal Access to Justice Act (the"EAJA"), 28 U.S.C. §2412(d). For the reasons set forth below, the plaintiffs' Renewed Motion for Attorney Fees and Costs (dkt. # 124) is DENIED.

## DISCUSSION

### LEGAL STANDARD

The EAJA provides in pertinent part that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an

---

[3] A prior Motion for Attorney Fees and Costs filed by the plaintiff was denied without prejudice to being refiled after the time to file a petition for a writ of certiorari had expired or the Supreme Court had denied such a petition or had issued a decision. (Dkt. # 115.)

award unjust." 28 U.S.C. §2412 (d)(1)(A). Both parties agree that the plaintiffs are prevailing parties for purposes of the EAJA. The parties disagree, however, as to whether the position of the United States was "substantially justified," and that issue is dispositive of the plaintiffs' pending motion.

In the context of the EAJA, "substantially justified" means "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The government bears the burden of proof on this issue and, in order to meet its burden, "must demonstrate that [its] position had a 'reasonable basis both in law and fact.'" Ericksson v. Commissioner of Social Security, 557 F.3d 79, 82 (2d Cir. 2009)(quoting Pierce, 487 U.S. at 563). "When assessing the position of the United States, [the court] review[s] both the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based." Id. (internal quotation marks omitted).

"It is not sufficient to satisfy the [EAJA] that the government's position has not prevailed. The statutory structure assumes that 'the Government . . . could take a position that is substantially justified, yet lose.'" Fabi Construction Co. v. Secretary of Labor, 541 F.3d 407, 412 (D.C. Cir. 2008)(quoting Pierce, 487 U.S. at 569). While there are various factors that may be considered in determining whether the position of the

United States was substantially justified, "[i]f the case turns on a question of law, the government can show that its position was substantially justified even if its legal argument is ultimately rejected, if it can show that the question was close or unsettled." Segers v. Astrue, 622 F. Supp. 2d 249, 254 (E.D. Pa. 2009)(internal quotation marks omitted).

## LEGAL ANALYSIS

The government's position with respect to the operation of the Manchester CPU was that the conduct complained of by the plaintiff was private religious expression on private property, and that the Postal Service neither encouraged nor induced SYI to display religious materials in the CPU. Both this court and the Court of Appeals concluded to the contrary that SYI is a state actor for the purposes of First Amendment and Establishment Clause jurisprudence. This court, while concluding that "there is no state action here under the 'public function' test," did find that "the SYI CPU is so entwined with the Postal Service that the SYI CPU's actions may be considered the actions of the Postal Service." Cooper I, 482 F. Supp. 2d at 292. The Court of Appeals concluded that "SYI is a state actor under the public function test because it performs . . . activit[ies] that traditionally ha[ve] been the exclusive, or near exclusive, function of the State." Cooper III, 577 F.3d at 493 (internal quotation marks omitted). Both this court and the Court of Appeals then proceeded

to apply the test articulated by the Supreme Court in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971) in order to determine whether the state action at issue violated the Establishment Clause. As to that part of the CPU dedicated to SYI's public function, both courts were in agreement that the religious displays at issue failed the <u>Lemon</u> test and thereby violated the Establishment Clause.

Although the Court of Appeals found that "[t]he religious displays on the postal counter clearly fail the Lemon test," the Court went on to note that "the analysis [of the Establishment Clause challenge] is complicated by a disclaimer on the postal counter[.]" <u>Cooper III</u>, 577 F.3d at 495. The disclaimer referenced by the Court of Appeals is a sign on the Manchester CPU postal counter which reads: "The United States Postal Service does not endorse the religious viewpoint expressed in the materials posted at this Contract Postal Unit."  "While the presence of this disclaimer informs our review, the precise impact of a disclaimer on Establishment Clause analysis is not at all clear, and this Circuit has not directly addressed the issue. Supreme Court jurisprudence on disclaimers is not determinative." <u>Id.</u>

The Court of Appeals noted that in <u>County of Allegheny v ACLU</u>, 492 U.S. 573 (1989), the presence of a disclaimer did not alter the conclusion that a religious display violated the

-6-

Establishment Clause, but that in <u>Rosenberger v. Rector and Visitors of University of Virginia</u>, 515 U.S. 819 (1995), "Justice O'Connor's concurrence took note of an explicit disclaimer as a justification for the [conclusion that the activity in question did not violate the Establishment Clause]." <u>Cooper III</u>, 577 F.3d at 495 (internal quotation marks omitted). The Court then cited decisions from both the Ninth Circuit and the Sixth Circuit suggesting that the presence of a disclaimer lessens the perception of impermissible religious endorsement by the state. <u>Id.</u> at 495-96.  Ultimately, the Court determined that "[h[owever useful the disclaimer is, the law does not unambiguously allow us to draw the conclusion that the disclaimer prevents or cures a violation [of the Establishment Clause]." <u>Id.</u> at 496.

"[U]ncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." <u>Gatimi v. Holder</u>, 606 F.3d 344, 348 (7th Cir. 2010)(internal quotation marks omitted); <u>see</u> <u>also</u> <u>Toutounjian v. INS</u>, 2 F. Supp. 2d 374, 378 (W.D.N.Y. 1998)(government's position was substantially justified where "there was no clear precedent on the [legal] question [upon which the case turned]"). The court is of the view that there was sufficient uncertainty as to the legal issues presented in this case to warrant a conclusion that the government's position has a reasonable basis in law and fact

and was, therefore, "substantially justified." This legal uncertainty is illustrated by the Court of Appeals' discussion of the treatment of disclaimers by other courts considering the issue. The court also notes that while it concluded that "there is no state action here under the 'public function' test," Cooper I, 482 F. Supp. 2d at 292, the Court of Appeals concluded that "SYI is a state actor under the public function test because it performs . . . activit[ies] that traditionally ha[ve] been the exclusive, or near exclusive, function of the State." Cooper III, 577 F.3d at 493 (internal quotation marks omitted).

While the court acknowledges that the plaintiff obtained significant relief and unquestionably is a prevailing party, the court believes that the uncertainty and closeness of the legal issues presented demonstrate that the government's position was substantially justified. See Welter v. Sullivan, 941 F.2d 674, 676 (8th Cir. 1991)("Closeness itself is evidence of substantial justification."). For that reason, the plaintiff's motion for attorney's fees is denied.

CONCLUSION

For the foregoing reasons, the plaintiffs' Renewed Motion for Attorney Fees and Costs **(dkt. # 124)** is **DENIED**.

**SO ORDERED** this 23rd day of September, 2011.

_____/s/ DJS_____

**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**